S08A1785. BELL v. THE STATE.
(671 SE2d 815)

BENHAM, Justice.

Appellant Curtis Bell was found guilty of the malice murder of Gloria Jackson, the burglary of her home, armed robbery, aggravated assault, and forgery.[1] On appeal he takes issue with the sufficiency of the evidence, several evidentiary rulings, a jury instruction, and several of the sentences imposed following the jury's return of its guilty verdicts.

The State presented evidence that Gloria Jackson was found dead in her Fitzgerald home in the late afternoon hours of September 19, 2003. She last had been seen alive that day by a neighbor between 9:00-9:30 a.m. The deputy chief medical examiner testified the victim had died from loss of blood resulting from blunt force injuries to her head and face that had fractured her skull and many of the bones on the left side of her face. A handwriting expert testified that a personal check written on the victim's account with appellant as the payee was not written by the victim, and a fingerprint expert testified that the thumbprint of the person cashing the check that was affixed to the check by bank personnel when it was presented was that of appellant. The bank teller

---

[1] The victim was found dead on September 19, 2003. Appellant was arrested on September 22, 2003, and the grand jury returned a true bill of indictment against him on January 12, 2004. While the district attorney filed notice of intent to seek the death penalty on July 13, 2004, the trial held June 27-28, 2006, was not a death penalty trial. The jury returned its guilty verdicts on June 28 and the trial court imposed sentence the same day. Appellant's motion for new trial was timely filed on July 5, 2006, and was denied on May 27, 2008. A timely notice of appeal was filed on June 12, 2008, and the appeal was docketed in this Court on July 11, 2008. It was submitted for decision on the briefs.

identified appellant as the person who presented the check at the victim's bank at 9:53 a.m. on the day the victim was found. In an audiotaped statement to investigating officers, appellant said the victim owed him $300 for tree pruning and he approached her for payment on September 19. The victim wrote him a check for $100 and when she looked for aspirin that appellant had requested, appellant found a tree limb with a metal "stob," entered the victim's home and used the tree limb to strike the victim on the head. When the victim collapsed on her sofa, he continued to strike her, hitting her a total of four times. He then left, taking the tree limb and the victim's wallet and checkbook with him. He wrote a check to himself for $200 on the victim's account and presented it to the victim's bank for payment. The checkbook and wallet were recovered from the roadside where appellant told GBI agents he had thrown them from his car; the tree limb was not recovered, but a blood-covered piece of metal was found under the victim on the sofa.

1. Appellant contends his motion for directed verdict of acquittal on all charges except burglary was erroneously denied because there were no witnesses or direct evidence linking appellant to these crimes. Appellant's inculpatory statement to investigators and the bank teller's identification of him as the person who uttered the forged check is direct evidence of guilt. See *White v. State*, 276 Ga. 583 (2) (581 SE2d 18) (2003). Furthermore, the State may use direct and circumstantial evidence to prove guilt (see *Walker v. State*, 282 Ga. 406 (1) (651 SE2d 12) (2007)), and an appellate court reviewing a trial court's denial of a motion for directed verdict of acquittal applies the "sufficiency of the evidence" test of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). *Woods v. State*, 269 Ga. 60 (2) (495 SE2d 282) (1998). The evidence summarized above is sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of burglary (entering the dwelling of another with the intent to commit a felony or theft); of armed robbery (using, with the intent to commit a theft, an offensive weapon, i.e., a tree limb with a piece of metal affixed to it, to take the property of another); of aggravated assault (using the tree limb as an offensive weapon to assault the victim by repeatedly striking her about her head and face, resulting in serious bodily injury); and malice murder (with malice aforethought, causing the death of the victim by hitting her repeatedly with the tree limb about her head and face). *Jackson v. Virginia*, supra.

However, OCGA § 16-1-7 (a) (1) prohibits a defendant of being convicted of more than one crime when the same conduct of the accused establishes the commission of more than one crime and one crime is included in the other. The aggravated assault conviction is included in the malice murder conviction under OCGA § 16-1-6 (1)

since the same conduct of the defendant (beating the victim about the head and face with a tree limb) establishes the commission of both aggravated assault and malice murder, and aggravated assault is "established by proof of the same or less than all the facts that were required to establish proof of the [murder] offense." *Drinkard v. Walker*, 281 Ga. 211, 213 (636 SE2d 530) (2006). To establish the crime of malice murder, the State proved that appellant, with malice aforethought, caused the victim's death by striking her about the head and face with a tree limb to which a piece of metal was attached; to establish the crime of aggravated assault, the State proved that appellant caused serious bodily injury to the victim by striking her about the head and face with an instrument that caused serious bodily injury — a tree limb to which a piece of metal was attached. See *Fletcher v. State*, 284 Ga. 653 (670 SE2d 411) (2008); *Thomas v. State*, 284 Ga. 540 (668 SE2d 711) (2008) (aggravated assault conviction merged with malice murder conviction). Compare *McCloud v. State*, 284 Ga. 665, 666 (3) (670 SE2d 784) (2008) (charges did not merge where aggravated assault was established by evidence the victim was beaten and strangled and malice murder was established by evidence the victim was stabbed to death). Because OCGA § 16-1-7 (a) (1) prohibits a defendant from being convicted of more than one crime where one crime is included in another, the conviction for aggravated assault must be vacated. Accordingly, the judgment of conviction and sentence imposed for aggravated assault must be vacated. *Ludy v. State*, 283 Ga. 322 (4) (658 SE2d 745) (2008).

There is evidence appellant committed the crime of forgery in the first degree in that, with intent to defraud, he made and possessed a check purportedly with the authority of the victim who had not given authority, and uttered that check. OCGA § 16-9-1 (a). Appellant contends his motion for directed verdict of acquittal as to the forgery charge should have been granted because venue of the forgery charge was not proved.

Generally, "all criminal cases shall be tried in the county where the crime was committed. . . ." Ga. Const. 1983, Art. VI, Sec. II, Par. VI. See also OCGA § 17-2-2 (a).

> Venue is a jurisdictional fact, and is an essential element in proving that one is guilty of the crime charged. [Cits.] "Like every other material allegation in the indictment, venue must be proved by the prosecution beyond a reasonable doubt." [Cits.] Proof of venue is a part of the State's case, and the State's failure to prove venue beyond a reasonable doubt renders the verdict contrary to law, without a sufficient evidentiary basis, and warrants reversal. [Cits.]

(Punctuation omitted.) *Jones v. State*, 272 Ga. 900 (2) (537 SE2d 80) (2000). The State may use both direct and circumstantial evidence to prove venue. Id. at 902-903.

Uttering or delivering the writing being an essential element of forgery in the first degree, the offense is not completed until the writing is uttered or delivered, and venue lies in the county in which the unauthorized writing was uttered. *Cade v. State*, 262 Ga. App. 206 (1) (a) (585 SE2d 172) (2003). In the case before us, the bank employee to whom the forged check was presented for payment did not testify that the bank was in Ben Hill County; she did testify that she knew the victim and had attended to her banking needs. In his statement to police, appellant admitted he had taken the forged check to the victim's bank, and one of the GBI agents investigating the victim's death and the check forgery testified he was unable to procure the forged check from the Fitzgerald branch of the bank because it was with the bank's security division. A photocopy of a check written by the victim on her account reflects that her account was in Fitzgerald, Georgia. Another GBI agent testified that the victim's home, also in Fitzgerald, Georgia, is in Ben Hill County. There being circumstantial evidence that appellant uttered the check to a bank in Fitzgerald and that Fitzgerald is located in Ben Hill County, there was sufficient evidence to authorize a rational trier of fact to find that appellant uttered the check in Ben Hill County. Accordingly, appellant's contention that venue was not proven is without merit.

2. Appellant contends the trial court erred when it allowed the State to introduce into evidence the statement he had made to the investigating GBI agents and local police. Appellant maintains he was under the influence of cocaine when he spoke with the law enforcement personnel and did not possess the ability to knowingly and intelligently waive his constitutional rights and could not have freely and voluntarily made the statement to the investigators.

At the hearing held pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), the GBI agent who conducted the interview with appellant testified appellant drove himself to the police station after being told by his brother that the law enforcement personnel investigating the death of Mrs. Jackson wanted to speak with him. Appellant was advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), and executed a written waiver of rights prior to the commencement of the hour-long interview. The agent testified appellant was not threatened and no promises or hope of benefit were extended him. The agent testified he was familiar with persons under the influence of alcohol or cocaine and that appellant did not exhibit signs of intoxication. Appellant did not testify at the hearing.

> In ruling on the admissibility of an in-custody statement, a trial court must determine whether, based upon the totality of the circumstances, a preponderance of the evidence demonstrates that the statement was made freely and voluntarily. Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson v. Denno* hearing will be upheld on appeal.

*Roberts v. State*, 282 Ga. 548 (2) (651 SE2d 689) (2007). In making its ruling, the trial court noted there was no evidence appellant was under the influence of cocaine at the time he made the incriminating statement. Since the evidence presented at the hearing supported the trial court's denial of the motion to suppress, we find no error in the trial court's decision. Id.

3. Appellant complains of a violation of due process of law and his right to a fair trial in the second sentence of the trial court's instruction to the jury regarding its consideration of the credibility of the accused as a witness. After instructing the jury that it was to determine the credibility of the witnesses and, in passing on their credibility, the jury could consider a number of factors, including a witness's "interest or lack of interest," the trial court told the jury that

> when the accused testifies, he at once becomes the same as any other witness and his credibility is to be tested by and subject to the same tests as are legally applied to any other witness. In determining the degree of credibility that should be accorded his testimony, you may take into consideration the fact that he is interested in the result of the prosecution.

As appellant acknowledges, we have approved as a correct statement of law an instruction that, in assessing the credibility of witnesses, the jury may take into consideration the fact that the defendant who testifies is interested in the outcome of the prosecution. *Johns v. State*, 239 Ga. 681 (4) (238 SE2d 372) (1977). See also *Hudson v. State*, 108 Ga. App. 192 (4) (132 SE2d 508) (1963) (where the Court of Appeals set out a suggested charge and instructed trial courts charging a jury with reference to the credibility of the accused as a witness to "instruct them with reference to the method to be used in determining the credibility of all witnesses"). We have observed that "the contested instruction 'made it plain that the defendant's testimony was not to be given different treatment' from that of the other witnesses [cit.] . . . [and] merely stated the self-evident fact of [the defendant's] interest in the outcome of the case. [Cit.]"

*Kennedy v. State*, 277 Ga. 588 (2) (592 SE2d 830) (2004); *Woods v. State*, 265 Ga. 685 (5) (461 SE2d 535) (1995) (charge upheld in both cases against contention it improperly singled out defendant's testimony). See also *Boyd v. State*, 284 Ga. 46 (3) (663 SE2d 218) (2008) (charge upheld against contention it usurped jury's role in assessing defendant's interest in the case and thus his credibility); *Larry v. State*, 266 Ga. 284 (3) (466 SE2d 850) (1996) (charge upheld against contention it violated due process and equal protection by singling out defendant's testimony and applying to it a different standard). Appellant's contention is without merit.

4. During the trial and at the sentencing hearing, the State introduced certified copies of appellant's previous convictions for aggravated assault and carrying a pistol without a license (1985) and possession of a firearm by a convicted felon and possession of a sawed-off shotgun (1997). Appellant contends the convictions should not have been admitted into evidence because they were the result of appellant's entry of guilty pleas without benefit of counsel. The trial transcript reflects that defense counsel affirmatively stated he had no objection to the admission of the certified copies during the trial; the transcript of the sentencing hearing contains defense counsel's statement that he had "no problem with the Court taking into consideration . . . this previous felony conviction back in 1985 and also one in 1997." Appellant's failure to object when the certified copies of his prior convictions were admitted into evidence constitutes a waiver of appellant's ability to raise on appeal the propriety of their admission. *Bridges v. State*, 279 Ga. 351 (9) (613 SE2d 621) (2005).

5. When the trial court sentenced appellant for the armed robbery conviction, the court imposed a 30-year sentence. Appellant contends such a sentence is erroneous and the State agrees. See OCGA § 16-8-41 (armed robbery is punished by life imprisonment or for a term of imprisonment of between ten and twenty years). Accordingly, the sentence for armed robbery is vacated and the case remanded to the trial court for resentencing on that conviction.

*Judgment affirmed in part and vacated in part; sentence vacated in part and case remanded for resentencing. All the Justices concur except Hunstein, P. J., who concurs in Divisions 1, 2, 3, 5, and in the judgment.*

DECIDED JANUARY 12, 2009.

*Harold B. Baker, Clinton L. Lott IV, Timothy L. Eidson*, for appellant.

*Denise D. Fachini, District Attorney, Thurbert E. Baker, Attorney General, Sheila E. Gallow, Assistant Attorney General*, for appellee.